570 So.2d 151 (1990)
CRESCENT DRILLING & DEVELOPMENT, INC., Plaintiff-Appellee,
v.
SEALEXCO, INC., et al., Defendants-Appellants.
No. 89-471.
Court of Appeal of Louisiana, Third Circuit.
November 7, 1990.
Rehearing Denied December 14, 1990.
Writ Denied February 8, 1991.
*152 M. Taylor Darden, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, for plaintiff-appellee.
Simon, Peragine, Smith & Redfearn, Robert L. Redfearn, Morgan & Williams, L. Linton Morgan, Gordon, Arata, McCollam & Duplantis, Guy E. Wall, New Orleans, Stockwell, Sievert, Viccellio, Clements & Shaddock, Emmett Sole, Lake Charles, for defendants-appellants.
Before GUIDRY, LABORDE and KING, JJ.
GUIDRY, Judge.
Crescent Drilling and Development, Inc. (Crescent) filed this concursus proceeding, joining as defendants Sealexco, Inc. (Sealexco), Ben Seale, Warren Seal, Warren Resources and Warren Knight, to determine the ownership of certain funds, the proceeds of oil and gas production from several wells successfully drilled on a mineral lease operated by Crescent.[1] The dispute over the ownership of the funds arises as a result of competing claims to the interest of Warren Knight in various wells which was forfeited. The trial judge concluded that Ben Seale acquired the entire before casing point interest (BCP) forfeited by Knight and 75% of that BCP interest as the after casing point interest (ACP) in accord with Seale's exploration agreement. The remaining ACP interest forfeited by Knight was found by the trial judge to have reverted to Sealexco, the promoter of the prospect.[2] Warren Seal and his wife, Julia Seal, suspensively appeal urging four specifications of error:
1. The trial court erred in concluding that Ben Seale acquired the Knight forfeited interest in the mineral lease because there was no meeting of the minds regarding the amount of his acquisition and it was never reduced to writing.
2. The trial court erred in refusing to award Warren Seal an interest in the funds on deposit because the evidence established that he acquired a portion of the Knight forfeited interest.
3. Ben Seale forfeited his interest in the prospect because he failed to timely tender his share of the cost of the Schwing No. 3 Well and because he failed to pay his prospect fee or to participate in an obligation well.
4. The trial court erred in awarding all of the funds on deposit to Ben Seale and Sealexco because Sealexco assigned forty (40%) percent of its assets to Warren Seal.

FACTS
In 1983, Ben Seale, Jerry Seale (Ben's brother) and Warren Seal (no relation) formed Sealexco for the purpose of acquiring, selling, drilling and operating interests in various oil and gas prospects. Each was an officer, director and stockholder in Sealexco, Warren, President, 40%; Jerry, Vice-President, 20%; and, Ben, Secretary-Treasurer, 40%. Each stockholder offered a unique contribution to the venture, Ben provided capital; Jerry provided engineering expertise; and, Warren provided geological expertise. Warren Seal ran the day to day activities of Sealexco.
In May 1984 Sealexco entered into a farmout agreement with Tee Oil, Inc., known as the Schwing "C" Farmout. Sealexco, under the farmout agreement, would earn interests in the Tee mineral lease by drilling wells. Thereafter, Sealexco entered into an exploration agreement with Ben Seale which gave him an interest in the Schwing "C" Farmout, also known as the Iberia Extension Prospect, in return for the payment of a prospect fee and an agreement to participate in certain wells. A similar exploration agreement was entered into by Sealexco and Crescent.
In an agreement dated August 13, 1984, between Sealexco and Knight, the latter *153 was to acquire certain interests in the Iberia Extension Prospect upon his participation in the drilling of various wells. Under the Knight exploration agreement, the interests to be earned by Knight were as follows:

 BCP ACP
First Well 18.000% 20.000%
Second Well 15.187% 17.187%
Third Well 15.187% 17.187%
All other wells 17.187% 17.187%

At some point in time, Warren Seal, as president of Sealexco, contended that Knight had defaulted in his obligations under the agreement and, therefore, forfeited all of his rights with respect to the Iberia Extension Prospect. On December 18, 1989, Sealexco agreed that Knight would not forfeit his rights if within a certain time period he would pay his BCP costs for the first well to be drilled on the Iberia Extension Prospect, the Schwing No. 3 well, as well as money that he owed on another prospect, the Iberia Dome Prospect. Knight was only able to pay one-half of the monies in question by the first deadline. However, Sealexco and Knight agreed that (1) by so paying he had earned one-half of his interest in the Iberia Extension Prospect under his exploration agreement; (2) Sealexco would "escrow the outstanding ½ (50%) interest ... until the close of business as of 4:00 p.m., Thursday, December 27, 1984"; and, (3) if Knight did not pay the balance of his BCP cost in the Schwing No. 3 well by that date, he would forfeit his interest in the escrowed half and would execute any documents required by Sealexco "to evidence of record the reversion to and vesting in Sealexco" of the escrowed interest.
Knight was unable to pay any additional money and pursuant to his agreement with Sealexco, the escrowed interest reverted to Sealexco (hereinafter, the Forfeited Interest). The ownership of the funds attributable to the Forfeited Interest in the Schwing Nos. 3, 4, C-1, C-2 and C-3 wells is the subject of this litigation.
Prior to commencement of trial, all parties stipulated that any interest of Ben Seale and Sealexco in the Schwing No. C-2 well had been relinquished and forfeited to Crescent, Warren Knight and Warren Seal in the proportions of their respective interests until such time as they should receive, out of the said well's production, the amount of the stipulated penalty provided for under the agreements. Furthermore, all parties agreed that, pursuant to a Declaration of Nullity executed by the affected parties, Warren Resources had no interest in the mineral lease and/or the funds on deposit.
The Knight forfeiture in the Iberia Extension Prospect occurred in December 1984. The principal well in contention is the Schwing No. 3 well. Knight forfeited a 9% BCP and a 10% ACP interest in this well. At the time of the forfeiture, Sealexco had a 2% BCP and a 20% ACP interest; Ben Seale had a 20.416% BCP and a 15.3125% ACP; Warren Seal had no interest.

SPECIFICATION OF ERROR NO. 1 WAS THERE A MEETING OF THE MINDS?
Warren Seal contends and testified that when Ben Seale was informed of an additional interest being available in the Schwing No. 3, he requested that his BCP interest be increased to 30%. Since by written agreement Ben Seale's ACP interest in the Schwing No. 3 was 757" of his BCP, Ben's ACP interest would then increase to 22.50%. Seal further contends and testified that since no one else wanted any additional interest in the well, Jerry and Ben Seale agreed to let him purchase the remaining BCP and ACP interests. In sum, Warren Seal testified that after the forfeiture Sealexco had 11% BCP and 30% ACP and in accordance with agreements between Ben Seale, Jerry Seale and himself Sealexco disposed of all of its BCP interest (11%) and the 10% ACP interest forfeited by Knight in the following manner. The 11% BCP went 1.416% to Warren Seal and 9.584% to Ben Seale (bringing Ben Seale up to 30% BCP) and the 10% ACP was split 7.1875% to Ben Seale and 2.8125% to himself.
Ben Seale's version of the transaction and his testimony in regard thereto differs. *154 Ben Seale testified that when Warren Seal informed him that an additional interest was soon to become available in the Schwing No. 3, that he informed Seal that he would increase his BCP participation up to 30%. Ben contends that he thus acquired the entire BCP (9%) forfeited by Knight but none of the 2% BCP then held by Sealexco. Further, in accordance with his exploration agreement, he acquired an additional ACP equal to 75% of the acquired BCP (9% × 75% = 6.75%) with the remainder of the forfeited ACP (3.25%) reverting to Sealexco. Unfortunately, no specific written document was executed which details and/or supports either version of the transaction.
As aforestated, although no specific written document was ever executed by the parties, parol evidence and written documents in the record support the trial court's conclusion that there was a meeting of the minds and that Ben Seale acquired the entire Knight forfeited BCP interest and 75% of that as additional ACP. As Sealexco was the beneficiary of any unsold interest, the 3.25% ACP interest which remained reverted to Sealexco.
It is uncontested that Warren Seal contacted each participant in the Schwing No. 3 well either orally or by letter offering the forfeited Knight interest to each. Ben Seale was the only participant to respond that he would increase his interest up to 30%. Warren Seal testified that he not only assigned Ben Seale the entire forfeited Knight BCP interest, but also attempted to have Ben Seale acquire a part of the 2% BCP retained by Sealexco.
Although the assignment to Ben Seale was never reduced to writing, the Sealexco-Seale operating agreement, the verbal commitment of the parties combined with the subsequent actions of the parties, the acceptance of Ben Seale's money, the execution of documents showing Ben Seale's increased interest and the disbursal of funds based upon the increased interest all confirm the conclusion that Ben Seale acquired the entire BCP interest forfeited by Knight and 75% of that interest as an additional ACP interest.
In his reply brief, Warren Seal points out that awarding Ben Seale the entire forfeited Knight BCP interest in Schwing No. 4 would increase Ben Seale's interest in that well to over 30.0% BCP. We do not find this fact to be significant. When Ben Seale and Warren Seal, as president of Sealexco, negotiated to raise Ben Seale's interest up to 30.0%, they were only concerned with the Schwing No. 3 well, the one well then drilling. As Ben Seale paid for the entire forfeited Knight interest and was always treated, until this suit was filed, as owner of the entire forfeited interest, we find no error in the trial court's judgment which awards all of the various forfeited BCP interests and 75% of those as additional ACP interest (except as stipulated on the Schwing C-2) to Ben Seale.

SPECIFICATION OF ERROR NO. 2

DID WARREN SEAL ACQUIRE ANY INTEREST IN THE TEE MINERAL LEASE?
Warren Seal contends that he acquired a 1.416% BCP and a 2.8125% ACP interest of the forfeited interest and, therefore, owns a like interest in the Tee mineral lease. The trial court found, and we affirm, that the entire forfeited BCP interest was acquired by Ben Seale and that the ACP interest remaining after transfer to Ben Seale reverted to Sealexco. Accordingly, if Warren Seal acquired any interest in the Tee mineral lease, it had to come from Sealexco.
Although the record contains an assignment of an interest in the Tee mineral lease executed by Warren Seal, as president of Sealexco, in favor of himself, we conclude, as did the trial court, that this assignment is invalid and of no force or effect.
Ben and Jerry Seale both testified that they never authorized an assignment of any interest in the Tee mineral lease to Warren Seal, in their individual capacities or as members of Sealexco's board of directors. The record contains no corporate resolution authorizing this action. To the contrary, the record reflects that in September or early October 1985, Warren Seal requested authority from the Seales to execute *155 assignments on behalf of Sealexco but such authority was never granted. Notwithstanding that his request for authority was not granted, some two weeks later, on October 14, 1985, he executed the assignment on behalf of Sealexco to himself. The trial court's conclusion that Warren Seal acquired nothing by virtue of this assignment is not clearly erroneous. Groves v. Rosemound Improvement Association, Inc., et al, 490 So.2d 348 (La.App. 1st Cir. 1986), writ denied, 495 So.2d 304 (La.1986).

SPECIFICATION OF ERROR NO. 3

DID BEN SEALE DEFAULT IN HIS OBLIGATIONS UNDER HIS OPERATING AGREEMENT AND THUS FORFEIT HIS RIGHT TO AN INTEREST IN THE TEE MINERAL LEASE?
Appellants contend that Ben Seale forfeited his interest in the Schwing "C" Farmout because he failed to timely tender his share of the cost of the Schwing No. 3 well; failed to pay the prospect fee required under his operating agreement with Sealexco; and, failed to participate in an obligation well. The trial court found no merit in these contentions.
The record reflects that matters between Sealexco and its operating partners in the Schwing "C" Farmout were handled very loosely. The Seale exploration agreement with Sealexco provides that he was to pay his BCP cost, upon written notice, 15 days prior to the spudding of a well. Ben Seale was never given written notice of the date the Schwing No. 3 well was to be spudded. Further, the record reflects that Sealexco, as a matter of practice, allowed its participants to make elections late, they were allowed to pay prospect fees and other obligations untimely, and were never penalized. There is nothing in the record to indicate that a participant's tender was ever refused because it was untimely. This is clearly evident by the negotiations between Sealexco and Warren Knight which culminated in Knight's retention of one-half (½) of his initial interest and forfeiture of one-half (½) thereof. Ben Seale's obligation for his share of the cost of the Schwing No. 3 well, although perhaps tendered untimely, was accepted by Sealexco, utilized and never returned. Further, the record makes clear that Ben Seale was the "money man" behind Sealexco. He initially loaned Sealexco over $300,000.00. Over the period of time that Warren Seal served as president of Sealexco, Ben Seale advanced the corporation in excess of two million dollars. As Sealexco incurred charges billable to Ben Seale, these charges were written off against money owed Seale by Sealexco. At the time the Schwing No. 3 was spudded, Sealexco owed Ben Seale a sum of money greatly in excess of his prospect fee and his share of the cost of the Schwing No. 3. We find no merit to these contentions.
We find appellants' contention that Ben Seale forfeited his interest in the farmout by failing to participate in an "obligation" well equally without merit. The record does not clearly reflect that the Schwing D-1 was an "obligation" well. The terms of the Seale operating agreement appear to reflect that non-participation by Seale in the Schwing D-1 operated only to foreclose his right to any interest in that well. In any event, when Ben Seale elected not to participate in this well, Sealexco made no claim that such election would result in forfeiture of his rights in the Schwing Farmout. Thereafter, Sealexco solicited and accepted Seale's participation in the drilling and completion of the Schwing C-1 and Schwing C-3 well which were drilled under the farmout.[3]
The trial court concluded in its oral reasons for judgment that appellants' contention of forfeiture fails for lack of proper notice, funds on hand, estoppel, waiver and the terms of the Seale exploration agreement. We find no error in this conclusion.

SPECIFICATION OF ERROR NO. 4

THE AWARDING OF ALL DEPOSITED FUNDS TO BEN SEALE AND SEALEXCO
By this last specification of error, Warren Seal argues that the trial court *156 erred in awarding all of the deposited funds, except those attributable to the Schwing No. C-2, to Ben Seale and Sealexco. Warren Seal argues that because of his stock redemption agreement, funds representing 40% of the forfeited Knight interest awarded to Sealexco should have been paid directly to him.[4]
The trial court's conclusion that the division of Sealexco's assets is not at issue in this case is clearly correct. The division of Sealexco assets and the enforcement of the terms of the stock redemption agreement between Warren Seal and Sealexco were not before the trial court and are not properly raised here.
For the reasons stated, the judgment of the trial court is affirmed. All costs of this appeal are charged to appellants.
AFFIRMED.
NOTES
[1] Although Julia Seal, wife of Warren Seal, was not named as a party defendant, she joined her husband in filing answer to the concursus petition.
[2] A before casing point interest (BCP) is a party's share of the drilling costs prior to casing or the dry hole cost of a well. An after casing point interest (ACP) is a party's share of the cost to complete, produce and operate a well and his interest in production.
[3] Neither Sealexco nor Ben Seale participated in the drilling and completion of the Schwing C-2.
[4] As a result of a stock redemption agreement between Sealexco and Warren Seal, the latter acquired 40% of the assets of Sealexco.